IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CESAR CANALES, | ) | Case No. 5:18-cv-1857 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVID GRAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner Cesar Canales, an Ohio prisoner serving concurrent sentences of life imprisonment after having been convicted of raping two children under thirteen years old, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Canales challenges the constitutionality of his convictions and sentences in *State v. Canales,* Case No. 2015-CR-1720 (Stark County Court of Common Pleas), claiming there was insufficient evidence to convict him and that his convictions were against the manifest weight of the evidence.[1]  ECF Doc. 1.  Respondent, David Gray, filed a return of writ on December 14, 2018.  ECF Doc. 13.  Canales filed a traverse on January 31, 2019.  ECF Doc. 16.  Canales is currently incarcerated at Belmont Correctional Institution.[2]

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Canales' petition or other case dispositive motions.
[2] https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A683526 (last visited 12/12/19).

Because Canales' claims are all procedurally defaulted, noncognizable and/or meritless, I recommend that his claims be DISMISSED and his petition for writ of habeas corpus be DENIED.

## II.    Procedural History

### A.       State Conviction

On November 9, 2015 a Stark County Grand Jury indicted Canales, charging him with two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) (Counts One and Two) and two counts of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4) (Counts Three and Four). ECF Doc. 13-1 at 3.  The charges involved two different victims, one under the age of 13 and the other under the age of 10.  Canales pleaded not guilty and the case proceeded to jury trial. ECF Doc. 13-1 at 6.

On June 7, 2016, the jury found Canales guilty of all charges. *Id*. On June 16, 2016, the trial court merged the convictions for gross sexual imposition with the rape convictions and imposed indefinite prison terms of life imprisonment with parole eligibility in 15 years on one rape count and 10 years on the other rape count, to be served concurrently. ECF Doc. 13-1 at 7-8.  The trial court also adjudicated Canales a Tier III sex offender. ECF Doc. 13-1 at 11.

### B.       Direct Appeal

On July 21, 2016, Canales, represented by new counsel, filed a notice of appeal and a motion to file a delayed appeal. ECF Doc. 13-1 at 12, 13.  The Ohio Court of Appeals granted the motion for delayed appeal. ECF Doc. 13-1 at 16.  Canales' brief asserted one assignment of error: that his convictions were against the sufficiency and manifest weight of the evidence. ECF Doc. 13-1 at 18.  The state also filed a brief. ECF Doc. 13-1 at 56.  On June 26, 2017, the Ohio Court of Appeals affirmed the trial court judgment. ECF Doc. 13-1 at 71, *State v. Canales,* 5th

Dist. Stark No. 2016CA00141, 2017-Ohio-5552.  Canales did not file a timely appeal to the Ohio Supreme Court.

### C.      Petition for Post-Conviction Relief

On December 9, 2016, while his direct appeal was pending, Canales filed a *pro se* petition for post-conviction relief and presented three grounds for relief:

> Ground for relief 1:  The use of proper allegation by the evidence provided for 2907.06(A)(4)(B)(C) as the allegation is that based upon the suppose [sic] conversation during the hours of suppose child sitting the defendant provided for the mother.  By the mother supposively working and she wasn't.

> Ground for relief II:  The lack of evidence of other than the hearsay of the victim(s) and the suppose records of sexual examination after the event of four months when the children were noted to have had sexual conduct with others and not sexual conduct with the defendant.

> Ground for relief III:  Violation of the Officers of the Court by  not adhering to court notice for Interpreter by Sup. R. 88(D)(1)(2)(3); (I).

ECF Doc. 13-1 at 83-84.  The state opposed the petition, moved for a dismissal and for summary judgment.  ECF Doc. 13-1 at 85.  On March 15, 2017, the trial court granted the state's motion to dismiss and for summary judgment.  ECF Doc. 13-1 at 94.  Canales did not appeal the trial court's decision.

### D.      Motion for Delayed Appeal to the Ohio Supreme Court

On October 17, 2017, Canales filed a *pro se* notice of appeal and motion for delayed appeal to the Ohio Supreme Court.  ECF Doc. 13-1 at 95, 97.  On December 6, 2017, the Ohio Supreme Court denied the motion for delayed appeal and dismissed the case.  ECF Doc. 13-1 at 110.

### III.    Federal Habeas Corpus Petition

On July 17, 2018, Canales placed his *pro se* petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254 in the prison mailing system.  ECF Doc. 1.  Canales' petition raises two

grounds for relief:

> **GROUND ONE:**  Petitioner's conviction of: Count 1 – Statutory Rape:; Count 2-
> Statutory Rape: with two counts of gross sexual imposition, also petitioner being
> designated a Tier III sex offender pursuant to R.C. Chapter 2950.  Are based on
> insufficient evidence, and there are no evidence in the state trial court record of
> Guilt Beyond a Reasonable Doubt, his imprisonment violates ***Jackson v.***
> ***Virginia,*** 443 U.S. 307.
>
> **GROUND TWO:**  Petitioner's conviction is against the weight of the evidence in
> violation of *Tibbs v. Florida,* 457 U.S. 31 and **IN RE WINSHIP**, 397 U.S. 358.

ECF Doc. 1 at 19.

### IV.    Law and Analysis

#### A.    Factual Background

We begin with a recitation of the factual findings of the Ohio courts.  The Ohio Court of

Appeals summarized the facts as follows:

> {¶ 3}  Appellant was convicted of abusing his live-in girlfriend's two young
> daughters.  At the time the abuse was reported, C.M. was 12, and the abuse had
> been occurring over a three-year period.  A.P. was 8 at the time of the disclosure,
> and the abuse had been taking place over a 19-month period.  This abuse included
> sexual intercourse with one victim and the attempted sexual intercourse with the
> other, and sexual contact with both girls.
>
> {¶ 4}  On May 28, 2014, sisters C.M. and A.P. disclosed to their friend Mason
> that their mother's boyfriend, Cesar Canales, had been doing sexual things to
> them.  Mason in turn told her mother what the girls had told her, who then told the
> girls' mother what the girls had disclosed.  The police were immediately called.
>
> {¶ 5}  Once law enforcement were called to the scene, the girls were taken to
> Akron Children's Hospital, where physical exams and sexual kits were
> performed.  During these exams, DNA samples were taken from C.M.'s vagina
> and her panties.  In addition, both girls were interviewed as part of the medical
> evaluation and treatment process.  The girls again repeated, in more detail, what

4

Canales had been doing to them sexually for a number of years.  The most recent time of sexual abuse was the night before.

{¶ 6}  Subsequent analysis of the DNA samples revealed the presence of foreign male DNA in C.M.'s vagina and on her panties.  As a result, a DNA sample was obtained from Canales and compared to the profile of the foreign DNA.  Canales could not be excluded as the source of the foreign DNA, the profile of which had a 1 in 5,556 probability of appearance.

{¶ 7}  C.M. testified at trial that Canales came into her mother's bedroom when C.M. would be watching TV alone there.  Canales would then take off her pants and underwear, would unzip his pants, and then put his "private part" into her "private part."  C.M. described these "private parts" as what is used to go to the bathroom.  (T. at 166-171).

{¶ 8}  C.M. testified that the last time Canales sexually abused her was the night before the disclosure.  She recalled that during a family get-together at their home, her mother left to get cigarettes and food.  While she was gone, C.M. went upstairs in the home to get something from her mother's bedroom.  Canales was already in the bedroom, and pulled off C.M.'s pants and underwear, put her on the bed, and then had vaginal intercourse with the young girl.  (T.at 181-189, 199-201).

{¶ 9}  Later that evening, C.M. was doing laundry with her sister A.P. and their friend, Mason, who was living with the girls' family at the time.  C.M. told Mason what Canales had done to her, and told her not to tell anyone.  Mason, however, told her own mother, who in turn told the girls' mother.  The girls' mother then talked with her daughters, who told her what had happened.  (T. at 172-174,184).

{¶ 10}  A.P. also testified at trial.  She stated that Canales touched her vagina on numerous occasions with his hand.  She testified that Canales also touched her with his "private," which she described as that body part that Canales used to go to the bathroom.  A.P. also circled areas on an anatomical drawing to indicate the body parts she was referring to.  A.P. testified that Canales did both forms of abuse multiple times, and always on the outside of her vagina.  A.P. stated that Canales did not enter her vagina with his penis because she was too small.  (T. at 292-296).

{¶ 11}  During their testimony, both girls admitted that they had denied that the sexual abuse occurred to their Big Sister, Shirley Moore.  In C.M.'s case, she stated that when Moore asked her about the allegations, she lied and said the abuse never occurred because she did not want to make Moore cry since she felt that Moore felt responsible for her.  (T. at 175-176).

{¶ 12}  During her testimony, A.P. stated that Moore also questioned her about the allegations, and A.P. told her that it didn't happen since A.P. "was tired of everybody talking about it."  (T. at 298).

{¶ 13}  During the girls' examinations at Akron Children's Hospital, they were interviewed by Amberly Hein Post, a social worker with the hospital who specializes on cases of child sexual abuse.  During her interview with C.M., the young girl told her that Canales had "put his privates into her privates," with the last time being the night before.  During her interview with A.P., Post was told that Canales had put his hands inside her pants and underwear and touched her private parts.  A.P. described another time when Canales attempted to put his private part inside her private part, but she pushed him off of her.  A.P. told Post that the last incident of abuse was the day before as well.  (T. at 328-333, 335-337, 340-341).

{¶ 14}  Dr. Eric Singer, a staff physician in the pediatric emergency room at Akron Children's Hospital, testified that he performed the sexual assault kits on both girls, which involved collecting evidence.  During his interview of the girls, A.P. told him that Canales had inserted a finger inside her vagina, the last time being a day or so before.  A.P. also told Dr. Singer that Canales had attempted to put his penis inside her vagina, but that it wouldn't fit.  (T. at 348-349, 355-361).

{¶ 15}  Detective Jerry Fuelling of the Canton Police Department testified that he was called into the case upon the report of the child sex abuse by the girls' mother, T.R.  (T. at 312-313).

{¶ 16}  Sarah Horst of the Forensic Biology Department of the Ohio Bureau of Criminal Investigations testified about the DNA evidence collected in this case. She examined the sexual assault kits of both girls, as well as C.M.'s underwear, which she swabbed.  The items were then sent for further analysis to Jennifer Colecchia, a forensic scientist with the BCI laboratory.

{¶ 17}  Colecchia detected DNA that was foreign to C.M. from C.M.'s vaginal swab, as well as from C.M.'s underwear. Colecchia submitted this DNA for further testing, specifically Y-STR, male-specific DNA testing.

{¶ 18}  Hallie Garofalo, also a forensic scientist with BCI, testified about the Y-STR testing done in this case.  Y-STR testing is a male-specific test.  With regard to the foreign DNA in C.M.'s vaginal swab, Garofalo concluded that a single Y-STR DNA profile was consistent with Canales's DNA profile.  She estimated that the rarity of this profile was 1 in every 5,556 unrelated males.  A further Y-STR DNA profile was obtained from the crotch area of C.M.'s underwear, which Garofalo also determine was consistent with Canales.  The DNA profile in this case was 1 in every 6,250 unrelated males.  Garofalo stated that she could not testify as to the exact source of this DNA.  (T. at 205,208-211, 214-218, 377-379, 380-385, 394-395, 229, 234, 237-238, 241, 245-246).

{¶ 19}  On June 7, 2016, at the conclusion of the trial, the jury found Appellant guilty of all counts as charged in the indictment.  The trial court sentenced Appellant to an aggregate prison term of life imprisonment with parole eligibility after serving 15 years.  The specific sentences for the offenses are as follows: Count 1 - Statutory Rape: life imprisonment with parole eligibility after ten (10) years; Count 2 - Statutory Rape: life imprisonment with parole eligibility after fifteen (15) years, with the sentences to run concurrently.  For sentencing purposes only, the two counts of gross sexual imposition were merged with the rape counts.  Appellant was also designated a Tier III sex offender pursuant to R.C. Chapter 2950.

*State v. Canales,* 5th Dist. Stark No. 2016CA00141, 2017-Ohio-5552.  These state court factual findings are presumed correct unless Canales rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

### B.    Procedural Default/Exhaustion

Warden Gray correctly argues that Canales' claims are procedurally defaulted because he failed to raise them in an appeal to the Ohio Supreme Court.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). "Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court."  *Gerth v. Warden, Allen Oakwood Corr. Inst.*, No. 17-4091, 2019 U.S. App. LEXIS 27788 *9 (6th Cir. Sept. 16, 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court."  *Id.* at *10 (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A).  The petitioner must have given the state courts "one full opportunity to resolve

any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.* 526 U.S. at 845; *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 2019 U.S. App. LEXIS 27788 at *10. A federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). It is this second type of procedural default that bars Canales' claims.

Canales did not raise his claims in the Ohio Supreme Court within the 45-day time limit set under Ohio law for appealing a court of appeals decision on direct appeal. Ohio S.Ct.Prac.R. 7.01. Under that rule, Canales' notice of appeal would have been due in the Ohio Supreme Court on August 10, 2017. Canales attempted to remedy that default by filing a motion for a delayed appeal on October 10, 2017. ECF Doc. 13-1 at 97. But the Ohio Supreme Court denied the motion on December 6, 2017. ECF Doc. 13-1 at 110.

In denying that motion, the Ohio Supreme Court applied a well-established procedural rule barring Canales' claims. The Sixth Circuit has held that the Ohio Supreme Court's timeliness requirement is an adequate and independent procedural rule and non-compliance waives federal review. *Smith v. State of Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 431-432 (6th Cir. 2006), citing *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004). Accordingly, because Canales broke a state procedural rule, and, as a result, never had his claims reviewed by

the Ohio Supreme Court, his claims are procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust them in state court.

### 1.        Cause for Procedural Default

A preliminary finding that a claim has been procedurally defaulted does not end the court's analysis of the issue.  In *Maupin,* 785 F.2d 135, the Sixth Circuit recognized that, even if the claims are procedurally defaulted, the court may consider the merits of the claim if "the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice."  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

Canales' traverse cites appropriate law for considering the procedural default of habeas claims including the exception for cause and prejudice.  ECF Doc. 16 at 17-18.  Even so, despite citing case law requiring that he must show cause and prejudice for his default, Canales hasn't offered any cause for his failure to file a timely appeal with the Ohio Supreme Court.  Rather, he argues that, because the Ohio Supreme Court affords a provision for filing delayed appeals, which he unsuccessfully invoked, his claims are not "significantly" procedurally barred.  He cites no legal support for this proposition, likely because no such support exists.  One way or the other, to show sufficient cause to excuse his procedural default, Canales was required to explain why something out of his control prevented him from filing a timely Ohio Supreme Court appeal. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  He has not met that requirement.  Canales hasn't offered any cause to excuse his failure to seek Ohio Supreme Court review.  Nor has he argued he would suffer any prejudice from this court's failure to grant relief on his claims.  For that reason, he has not availed himself of the first exception to procedural default. He *does*, however, argue that he is actually innocent, as further explained below.

### 2. Actual Innocence

Another exception to procedural default applies when a prisoner argues that he is actually innocent. A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415, 427 (6th Cir. Ohio 2003). This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008). New evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward,* 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo,* 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). New evidence, consequently, can only excuse procedural default in "extraordinary" cases. *Carter,* 443 F.3d at 538.

Here, Canales argues that he is actually innocent. However, the only new evidence he submits is his own affidavit stating, in relevant part, "I did not commit the crimes I am wrongfully detained and held against my own free will. I was told many things and have

10

attempted many things to prove such, that I am factually innocent."[3]  ECF 1 at 20.  In *Herrera v. Collins,* 506 U.S. 390 (1993), the Supreme Court held that newly discovered evidence consisting of affidavits is "disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417.  Canales' affidavit does not provide any factual support for his declaration of innocence.  Nor does he explain how this evidence is "new."  He had the right to introduce evidence to the jury and instead exercised his right to remain silent.  And, his affidavit must be considered in light of the evidence of his guilt at trial.  *Id.*  As is explained further below, there was more than sufficient evidence supporting the convictions against Canales.  It is highly unlikely that the evidence admitted at trial would have been any less probative if considered alongside Canales' affidavit or even his own testimony of innocence.  *See Id.*  He doesn't explain how a DNA sample from which he could not be excluded was found in one of the victim's vaginas and underwear or why the minor victims both lied about him at trial.  As in *Herrara,* Canales' evidence of actual innocence falls far short of what is required to trigger a constitutional review on the merits.  *Id.* at 416-419.

Canales has not submitted new evidence making a showing of his factual innocence so as to trigger a merits review of his constitutional claims.  Because his claims are procedurally defaulted and he has neither demonstrated cause and prejudice to excuse the default nor made a sufficient showing of his actual innocence, I recommend that Canales' Ground One and Two claims be DISMISSED and his habeas petition be DENIED.

---

[3] Although not related to his sufficiency of the evidence claim, Canales also asserts that he "do not understand English well, and I have addressed this issue in many attempts, but to no avail."  ECF Doc. 1 at 20.  Canales raised this argument in his *pro se* petition for post-conviction relief, and it appears to be completely meritless.  The trial court's judgment entry states, "The Petition is not in good faith in that clearly the defendant who was sitting through the trial knew that qualified and certified interpreters were provided to him throughout all the proceedings pertaining to this case."  ECF Doc. 13-1 at 94.

Because federal courts considering habeas petitions are permitted to address the merits before reaching a final conclusion on procedural default, I will proceed to consider the merits of Canales' claims, despite their procedural default. *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003); *Bates v. Bell,* 788 F.3d 568, 573 (6th Cir. 2015).

**C.     Merits Review**

**1.     AEDPA Standard[4]**

A state habeas prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act, *Pub. L. 104-132, 110 Stat. 1214* ("AEDPA"), which amended the habeas corpus statute by including a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition. *See Penry v. Johnson,* 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker,* 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

---

[4] Canales argues that this court should not apply AEDPA deference to his claims because the state court "failed to articulate its analysis." ECF Doc. 16 at 9.  He cites no case law for this proposition.  In *Hill v. Mitchell,* 400 F.3d 308, 313 (6th Cir. 2005) the Sixth Circuit held that, when a state court does not consider the merits of a claim, the federal court may review the claim *de novo* rather than through the deferential lens of AEDPA.  In *Hill,* the Ohio Court of Appeals had incorrectly determined that appellant's ineffective assistance of counsel claim was barred by *res judicata.*  Because the state court erred in applying a procedural bar to appellant's claim, the federal courts reviewed the claim *de novo. Id.; see also, Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001) (concluding that "when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded".) But here, the Ohio Court of Appeals did not err in applying a procedural bar.  Nor did it summarily reject Canales' arguments.  Canales' argument for less than AEDPA deference review is not well taken.

When the claim presented in a habeas corpus petition has been decided on the merits by a state court, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short,"[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as

13

'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable – a substantially higher

threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

2.    **Analysis**

In his Ground One claim, Canales argues that there was insufficient evidence to support

the statutory rape convictions against him.  Ground Two asserts that the convictions were against

the manifest weight of the evidence.  ECF Doc. 1 at 19.  Canales' Ground Two claim is not

cognizable on habeas review.  An argument that a conviction is against the manifest weight of

evidence is a state-law argument.  *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir.

2007); *Schwarzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193 *8 (6th Cir. 2018)

(unpublished) ("A manifest-weight-of-the-evidence claim in Ohio is a state law claim that is

similar to but ultimately different from a federal constitutional claim that the evidence was

insufficient to support a conviction.").  Because Canales' manifest weight claim presents no

federal law issue, it is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 68; *Lewis*,

497 U.S. at 780.  Canales' Ground Two claim would have to be dismissed on this basis even if it

had not been procedurally defaulted.

Federal habeas review *is* available for insufficient evidence arguments.  *Jackson,* 443

U.S. at 316; *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir.

2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  States have the power to

determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107, 119-120 (1982);

*Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting someone

14

"without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. (Emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Canales' evidence sufficiency claim, federal habeas review requires deference at two levels. "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros,* 578 F.3d 703, 710 (7th Cir. 2009)).

Canales' Ground One claim argues that there was insufficient evidence to find him guilty of rape as charged in Counts 1 and 2 of the indictment.  ECF Doc. 1 at 19.  However, his filings do little more than recite the applicable law, restate the facts from his trial, and assert that witnesses lied.  ECF Doc. 16 at 1-17.  He does not present new evidence or even an argument that would call into question the state courts' handling of his case.

The last explained state court decision that considered Canales' evidence insufficiency argument rejected it, holding:

{¶ 27}  Appellant argues there was insufficient evidence to support his convictions, and the convictions are against the manifest weight of the evidence. Appellant was convicted of two counts of rape, in violation of R.C. §2907.02(A)(1)(b), which reads:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 28}  In addition, Appellant was convicted of gross sexual imposition, in violation of R.C. §2907.05(A)(4), which reads:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 29}  At trial, both C.M. and A.P testified as to their dates of birth.  As set forth in more detail above, each of the girls testified that Appellant touched their vaginas.  C.M. testified that Appellant engaged in vaginal intercourse with her. A.P. testified that Appellant attempted to engage in vaginal intercourse with her

but was unsuccessful due to her small size.  Each of the girls testified the abuse occurred repeatedly.  The DNA evidence further supported the testimony of C.M.

{¶ 30}  We find the evidence presented at trial is sufficient for the trier of fact to find beyond a reasonable doubt the necessary elements to establish the two counts of rape and the two counts of gross sexual imposition.  The jury's verdicts were not against the manifest weight of the evidence.

*State v. Canales,* 5th Dist. Stark No. 2016CA00141, 2017-Ohio-5552.  As argued by respondent, the victims' testimony alone was sufficient to convict Canales of the charges.  ECF Doc. 13-1 at 271-288, 394-407.  A scientist from the Ohio Bureau of Criminal investigations also testified to the presence of male DNA in the swabs taken from the rape kit performed on the first victim that was consistent with Canales' DNA.  There was more than sufficient evidence to convict Canales of the indictment charges.

The state trial court and court of appeals concluded that the evidence of rape on Counts 1 and 2 was strong enough to convict Canales.  I agree.  If the question is, "Did the state introduce evidence which – if believed by the jury – was sufficient to prove each element of the charged offenses beyond a reasonable doubt?"  My answer would be an unequivocal, "Yes."  Canales' argument that we should believe him when he says the state's witnesses lied is not an argument that can succeed in a habeas review.  We are required to assume the witnesses *could* be believed.  And Canales has offered nothing but his word to substantiate his claim that the victims lied.  This is not enough.  Canales has not submitted any new evidence or even additional information that would change the evaluation of the trial evidence.  But even if I disagreed with the Ohio Court of Appeals' findings, I could not say that the trial court and the Ohio Court of Appeals were "objectively unreasonable" when they concluded that a rational trier of fact could have found Canales guilty beyond a reasonable doubt.  There was sufficient evidence produced at trial to convict Canales of rape as charged in Counts 1 and 2 of the indictment.  Because there is nothing

to suggest that the state court decision was contrary to or an unreasonable application of Supreme Court precedent, in addition to dismissal based on procedural default, I recommend that Canales' Ground One and Ground Two claims be dismissed as noncognizable and as lacking merit.

## V.  Recommendation Regarding Certificate of Appealability

### A.  Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Canales' Grounds One and Ground Two claims were procedurally defaulted because they were never reviewed by the Ohio Supreme Court as a result of Canales' failure to file a timely appeal. And Canales has not shown either cause or prejudice to excuse the default. His habeas claims are also noncognizable and/or lack merit as explained above. Canales has not shown any unreasonable applications of federal law or any unreasonable determinations of facts. Habeas relief is not available for the issues identified in his petition. This would not be not debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VI.  Recommendations

Because all of Canales' claims are procedurally defaulted, lack merit or raise only noncognizable state-law issues, I recommend that the Court DISMISS Canales' claims and DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254. I further recommend that he not be granted a certificate of appealability.

Dated: December 13, 2019

Thomas M. Parker
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).